**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**GARY RENELIQUE,**

                                        **Plaintiff,**

                    v.                                                                    **9:03-CV-525**
                                                                                         **(FJS/GJD)**

**GLENN S. GOORD, Correctional Services (D.O.C.S.);**
**LESTER N. WRIGHT, Deputy Commissioner/**
**Chief Medical Officer; LUCIEN J. LeCLAIRE, Jr.,**
**Deputy Commissioner; THERESA A. KNAPP-DAVID,**
**Director of Classification and Movement; STEVEN**
**VAN BUREN, Regional Health Services Administrator;**
**T. MALOW, Lieutenant, Bare Hill Correctional Facility;**
**MARTIN J. IRITZ, Sergeant, Bare Hill Correctional Facility;**
**Doctor T. KLUWE, Doctor, Bare Hill Correctional Facility;**
**Doctor FERRARI, Doctor, Bare Hill Correctional Facility;**
**McKENZIE, #205, Bare Hill Correctional Facility;**
**N. MADER, Officer, Bare Hill Correctional Facility;**
**K. FRESN, Officer, Bare Hill Correctional Facility; and**
**OFFICER STOLTENBERG, Collins Correctional Facility,**

                                        **Defendants.**

---

**APPEARANCES**                                  **OF COUNSEL**

**GARY RENELIQUE**
New York, New York 10026
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                       **STEVEN H. SCHWARTZ, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

In his amended complaint, which he filed on August 27, 2003, *see* Dkt. No. 18, Plaintiff

alleges violations of the Eighth Amendment guarantee against cruel and unusual punishment

because Defendants Fresn and Marlow failed to protect him from a sexual assault by his cell

mate and because, subsequently, Defendants Ferrari, Fresn, Kluwe, and McKenzie failed to

provide him with adequate medical assistance.  Plaintiff also contends that Defendant Mader

assaulted him by striking him in the head, neck, back, and lower abdomen and that Defendant

Stoltenberg discriminated against him by using harassing language, which embarrassed

and humiliated him.

In addition, Plaintiff alleges that Defendants Goord, Wright, LeClaire, Knapp-David, and

Van Buren violated his First Amendment rights by retaliating against him for filing complaints

and grievances.  Plaintiff also asserts that Defendant Mader deprived him of his "copy

card" and "legal article" in violation of his due process rights and that Defendant Iritz violated

his due process rights when he placed him in "administrative segregation" for thirty days.

Finally, Plaintiff claims that Defendants violated his rights under the Americans with Disabilities

Act ("ADA") by transferring him to another facility that could not accommodate his disability.

On December 10, 2004, Defendants Goord, Wright, LeClaire, Knapp-David, Van Buren,

Iritz, Ferrari, and Stoltenberg filed a motion for summary judgment on the ground that

Plaintiff's complaint lacked merit.  *See* Dkt. No. 59.  In addition, on August 10, 2005,

Defendants Mader and Fresn filed a motion to dismiss for failure to timely effect service upon

them, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 79.

On September 19, 2005, Magistrate Judge Di Bianco issued a Report-Recommendation in which he recommended that the Court grant Defendants' motion for summary judgment and dismiss the entire complaint on its merits.  *See* Dkt. No. 80.  Alternatively, Magistrate Judge Di Bianco noted that Plaintiff failed to exhaust his administrative remedies with respect to any of the claims he asserts in his amended complaint.  Magistrate Judge Di Bianco also recommended that the Court dismiss the claims against all Defendants with prejudice, except for the assault claim against Defendant Mader, which he recommended that the Court dismiss without prejudice.  Finally, Magistrate Judge Di Bianco recommended that the Court deny Defendant Mader's and Fresn's motion to dismiss as moot because of his recommendation regarding the merits of Plaintiff's claims.

Currently before the Court are Plaintiff's objections to these recommendations.

## II. DISCUSSION

**A.     Standards of review**

### 1. Review of Magistrate Judge's report-recommendation

A district court may, upon a *de novo* review, accept or modify a magistrate judge's recommendations to which a party specifically objects.  When neither party files an objection, the court may accept the recommendation absent a clear error.  *See* Fed. R. Civ. P. 72(b); *see also Edwards v. Fischer*, 414 F. Supp. 2d. 342, 346-47 (S.D.N.Y. 2006) (noting that "where objections are 'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments set forth in the original petition,' reviewing courts should review a report and recommendation for clear error. . . .  On the other hand, where objections to a

report are 'specific and . . . address only those portions of the proposed findings to which the party objects,' district courts should conduct a *de novo* review of the issues raised by the objections." (citation omitted)).


### 2. Summary judgment standard

A court may grant a motion for summary judgment when there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. If the moving party meets its burden to show that there is no genuine issue of material fact, the burden shifts to the non-moving party to put forth evidence that a disputed issue of fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). When analyzing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, and only disputes over facts that may affect the outcome of the case can preclude summary judgment. *See Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1053 (S.D.N.Y. 1987) (quotation omitted).


## B.   Service of process and personal jurisdiction

A plaintiff is responsible for the service of a summons and complaint upon each defendant in an action, *see* Fed. R. Civ. P. 4(c)(1), and has 120 days from the filing of the complaint to effect service upon all defendants, *see* Fed R. Civ. P. 4(m). Unless good cause is shown, the failure to serve a defendant within 120 days is grounds for the dismissal of the claims against the unserved defendant without prejudice. *See id.* A plaintiff, *pro se* and proceeding *in forma pauperis*, may rely upon the United States Marshals Service to effect service upon the defendants. The failure of the Marshals Service to effect service upon the defendants,

through no fault of the plaintiff, constitutes good cause for an extension.  *See Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (also noting that "'incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still be obtained*.'"  (quotation omitted)).

Magistrate Judge Di Bianco found that the Court did not acquire personal jurisdiction over Defendants Marlow, Kluwe, and McKenzie because Plaintiff failed to effect service upon those Defendants within 120 days of the filing of the amended complaint.  Magistrate Judge Di Bianco explained that the Inmate Records Coordinator at the Bare Hill Correctional Facility ("BHCF") returned the summons and complaints for these Defendants to the Marshal because these three Defendants were no longer employed at BHCF.  Although Magistrate Judge Di Bianco acknowledged that a court can grant an extension of time to effect service for good cause, he noted that Plaintiff had not asked for the Court's assistance with respect to service on these Defendants, although he had asked for such assistance with respect to other Defendants.  Magistrate Judge Di Bianco, therefore, found that Plaintiff had not established good cause for his failure to effect service on these Defendants and recommended that the Court dismiss the claims against these Defendants with prejudice.

Magistrate Judge Di Bianco also noted that, although Plaintiff failed to effect service upon Defendants Mader and Fresn within the required time-frame, the Court had ordered this service based upon Plaintiff's request for assistance in having the Marshal make a third attempt to serve these Defendants.  Magistrate Judge Di Bianco reasoned that, because the Court had provided Plaintiff with another opportunity to serve these Defendants, he would recommend that the Court deny Defendant Mader's and Fresn's motion to dismiss the claims

against them for failure to timely effect service.  Nonetheless, he noted that, because he was recommending that the Court dismiss the entire complaint on its merits, he would also recommend that the Court could deny Defendants Mader's and Fresn's motion to dismiss for failure to effect service as moot.  The parties do not object to this recommendation.

The Court has reviewed the entire record in this case and finds that there is nothing to indicate that Plaintiff properly served process upon **Defendants Malow, Kluwe, and McKenzie**.  Therefore, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with regard to Plaintiff's claims against these Defendants on the ground that the Court has not acquired  personal jurisdiction over them. Additionally, the Court adopts Magistrate Judge Di Bianco's recommendation and denies **Defendants Mader's and Fresn's** motion to dismiss for untimely service because, based upon the fact that Plaintiff sought the Court's assistance with service and, as a result, service was eventually effected on these Defendants, Plaintiff has shown cause for the untimely service of his summons and complaint on these Defendants.


**C.      Exhaustion of administrative remedies**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Second Circuit clarified this language on August 18, 2004, when it decided five cases addressing the PLRA's exhaustion requirement.  *See Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Hemphill v. State of N.Y.*, 380

F.3d 680 (2d Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Johnson v. Testman*,

380 F.3d 691 (2d Cir. 2004); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004).  In each of these

cases, the Second Circuit made clear that the exhaustion requirement is an affirmative defense,

not a jurisdictional requirement.  Accordingly, Defendants may be estopped from raising the non-

exhaustion defense if "special circumstances" exist that would justify Plaintiff's failure to exhaust

his administrative remedies.  *See Giano*, 380 F.3d at 675.  Special circumstances include threats

from prison officials and the discussion of a prisoner complaint during a disciplinary hearing.

*See id.* (citation omitted).

Magistrate Judge Di Bianco found that Plaintiff had not exhausted his administrative

remedies with respect to any claim he asserted in his amended complaint.  He explained that,

instead of filing grievances with the Inmate Grievance Resolution Committee ("IGRC") as

Section 139 of New York Correction Law requires, Plaintiff wrote many "letters" to supervisory

officials.  Magistrate Judge Di Bianco also noted that, even if the Court viewed these letters as

grievances, Plaintiff never appealed the responses to these letters to the Central Office Review

Committee ("CORC") as Section 139 requires.  Nonetheless, Magistrate Judge Di Bianco

decided that, because Plaintiff's claims ultimately failed on the merits, there was no need for him

to address the issue of whether there were special circumstances that justified Plaintiff's failure to

exhaust his administrative remedies.

Although not entirely clear, it appears that Plaintiff objects to Magistrate Judge Di

Bianco's findings on the ground that he did exhaust his administrative remedies.  However, he

does not provide any specifics to refute the documents that Defendants submitted regarding this

issue.  Rather, he merely refers to an "Albany official" and states that "they are not entitle [sic] to

summary judgment."  *See* Plaintiff's Objections at 1.

Despite this objection, the evidence in the record indicates that Plaintiff never attempted to file a grievance with IGRC with regard to the claims in his complaint, even though, in the past, Plaintiff had properly filed grievances concerning other complaints and was familiar with the grievance procedure.  Moreover, even if the Court were to construe Plaintiff's letters to supervisory officials as grievances, there is no evidence that Plaintiff ever appealed any adverse response to those letters to CORC.  Accordingly, the Court adopts Magistrate Judge Di Bianco's finding that Plaintiff did not exhaust his administrative remedies with respect to any of the claims in his amended complaint.[1]

**D.     The merits of Plaintiff's claims**

*1. Plaintiff's claims against Defendants in their official capacities*

The Eleventh Amendment to the United States Constitution prohibits plaintiffs from suing state governments unless the state has waived its immunity or Congress has abrogated that immunity.  *See Schallop v. N. Y. S. Dep't of Law*, 20 F. Supp. 2d 384, 390 (N.D.N.Y. 1998) (citation omitted).  This immunity extends to state agencies as well as state officials acting in their official capacities.  *See Komlosi v. N. Y. State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) (citation omitted).  Finally, in adopting section 1983, Congress did not intend to abrogate state sovereign immunity with respect

---

[1] Since Defendants properly raised this defense and the Court has concluded that Plaintiff did not exhaust his administrative remedies, the Court could grant Defendants' motion for summary judgment on this ground alone.  However, because a review of Plaintiff's claims reveals that they are without merit, the Court will address the substance of these claims.

to constitutional claims under that statute. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

Magistrate Judge Di Bianco recommended that, to the extent that Plaintiff seeks damages against Defendants in their official capacities, the Court dismiss Plaintiff's claims on the ground that the Eleventh Amendment bars such suits. Neither party objects to this recommendation, and the law is well-established that the Eleventh Amendment bars such claims.

Accordingly, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment to the extent that Plaintiff seeks damages against Defendants in their official capacity.

### 2. Plaintiff's Eighth Amendment claim against Defendant Fresn

The Eighth Amendment imposes duties on prison officials to take "reasonable measures to guarantee the safety of the inmates . . . ." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Under section 1983, an inmate may bring a complaint against prison officials alleging that they failed to protect him from another inmate's physical violence. *See Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) (citations omitted). To establish an Eighth Amendment claim against Defendant Fresn for failing to protect him from the alleged sexual assault of his cell mate, Plaintiff must prove that he was subjected to conditions that objectively posed a substantial risk of serious harm and that Defendant was deliberately indifferent to that substantial risk. *See Muhammad v. Sielaff*, No. 91 Civ. 7275, 1995 WL 459244, *6 (S.D.N.Y. Aug. 3, 1995) (citation omitted).

A defendant's state of mind must reflect more than ordinary negligence, although a showing of "an express intent to inflict unnecessary pain is not required to state a constitutional

-9-

cause of action." *Hendricks*, 942 F.2d at 113 (citation omitted).  The Supreme Court has defined "deliberate indifference" as the equivalent of "recklessness." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (citations and footnote omitted).  In criminal law, an individual acts recklessly when he consciously disregards a substantial risk of serious harm; thus, to maintain an action against a defendant based on deliberate indifference, the plaintiff must prove that the defendant had *actual knowledge* of the substantial risk of serious harm.  *See id.* at 837.

Magistrate Judge Di Bianco recommended that the Court dismiss Plaintiff's Eighth Amendment claim against Defendant Fresn, because although Plaintiff claimed that Defendant Fresn failed to protect him from being assaulted by his cell mate, he acknowledged that he only told Defendant Fresn about the incident after it had occurred.  Therefore, Magistrate Judge Di Bianco concluded that, because there was no indication that Defendant Fresn knew of or disregarded a substantial risk of serious harm to Plaintiff before the incident occurred, he could not have been deliberately indifferent to Plaintiff's safety.

Plaintiff does not object to this recommendation other than to note that Defendants are not entitled to summary judgment.  After reviewing the entire record, the Court finds that there is no indication that Defendant Fresn had actual knowledge of a substantial risk of serious harm to Plaintiff prior to the alleged attack.  Plaintiff's only allegations against Defendant Fresn concern his conduct *after* the alleged sexual assault.  Accordingly, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment failure to protect claim against Defendant Fresn.

### 3. Plaintiff's Eighth Amendment medical neglect claims against Defendants Ferrari and Fresn

To establish an Eighth Amendment claim against a defendant for denying him adequate medical treatment, a plaintiff must establish that his medical needs are objectively, sufficiently serious and that the defendant acted with a sufficiently culpable state of mind. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citations omitted). To have a sufficiently culpable state of mind, the defendant must have *actual knowledge* of the plaintiff's serious medical needs and consciously disregard that need. *See Farmer*, 511 U.S. at 837. Therefore, the plaintiff must prove a greater *mens rea* than negligence. Morever, a plaintiff's disagreement with prison officials over the appropriate form of treatment does not give rise to a constitutional violation under the Eighth Amendment. *See Magee v. Childs*, No. CIV904CV1089GLSRFT, 2006 WL 681223,*3-*4 (N.D.N.Y. Feb. 27, 2006) (citations omitted).

Magistrate Judge Di Bianco recommended that the Court dismiss Plaintiff's deliberate indifference medical claims on their merits because there was nothing in the record to suggest that either Defendant Ferrari or Defendant Fresn was deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff does not object to this recommendation other than to note that Defendants are not entitled to summary judgment. The Court's review of the record reveals nothing to suggest that any of Defendant Ferrari's or Defendant Fresn's actions rise to the level of deliberate indifference, and it is questionable whether Plaintiff's "head trauma" or his external hemorrhoid constitute a serious medical condition. Even if the Court considers these conditions serious, there is nothing in the record to indicate that Defendant Fresn acted with recklessness towards

Plaintiff's medical needs, especially considering that Plaintiff did not report the alleged sexual

assault until the morning after the incident.  Moreover, when Plaintiff did report the incident,

there is no indication that Defendant Fresn denied Plaintiff the opportunity to be examined at that

time.  In addition, Defendant Ferrari examined Plaintiff on two separate occasions and prescribed

medication for the external hemorrhoid.  Thus, despite Plaintiff's argument to the contrary, the

record does not support his claim that these Defendants acted with deliberate indifference

to his serious medical needs.

Accordingly, for the above-stated reasons, the Court adopts Magistrate Judge Di

Bianco's recommendation and grants Defendants' motion for summary judgment with respect to

Plaintiff's Eighth Amendment deliberate indifference medical claims against Defendants Ferrari

and Fresn.

### 4. Plaintiff's Eighth Amendment excessive force claim against Defendant Mader

To establish an Eighth Amendment claim against Defendant Mader for excessive force,

Plaintiff must prove that Defendant Mader acted "maliciously and sadistically for the very

purpose of causing harm."  *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (citing *Whitley*

*v. Albers*, 475 U.S. 312, 320 (1986) (citation omitted)).  However, the court need not reach the

merits of this claim if Plaintiff did not exhaust his administrative remedies pursuant to the Prison

Litigation Reform Act, 42 U.S.C. § 1997e(a), unless there are special circumstances justifying his

failure to do so.  *See Hemphill*, 380 F.3d at 690; *Testman*, 380 F.3d at 697-98.

Plaintiff alleges that, on November 26, 2001, Defendant Mader assaulted him by striking

him in the head, neck, back, and lower abdomen.  Magistrate Judge Di Bianco noted that,

although it appears that Plaintiff filed grievances about other incidents of employee misconduct, he failed to do so with respect to this particular assault; or, if he did file a grievance, he never appealed an adverse decision to CORC.  Magistrate Judge Di Bianco also found that, because it appears that Plaintiff knows how to exhaust his administrative remedies, there is no excuse for his failure to do so in this instance.  Therefore, Magistrate Judge Di Bianco recommended that the Court dismiss this claim because Plaintiff did not exhaust his administrative remedies.

Plaintiff does not object to this recommendation other than to note that Defendants are not entitled to summary judgment.  Since there are no special circumstances justifying Plaintiff's failure to exhaust his administrative remedies, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment excessive force claim against Defendant Mader without prejudice.

### 5. Plaintiff's claims against Defendants Goord, Wright, LeClaire, Knapp-David, and Van Buren

A prison inmate has a "right not to be subjected to . . . retaliation for his exercise of a constitutional right."  *Harris v. Keane*, 962 F. Supp. 397, 405 (S.D.N.Y. 1997) (citing *Jones v. Coughlin*, 45 F.3d 677, 679-80 (2d Cir. 1995)) (other citation and footnote omitted).  To establish a claim based upon a defendant's alleged retaliatory conduct, the plaintiff must prove that his conduct was constitutionally protected and that his punishment was motivated by that conduct.  *See Nunez v. Goord*, 172 F. Supp. 2d 417, 431 (S.D.N.Y 1996) (quotation omitted).  Since courts typically view such claims with skepticism given the ease by which they are created, *see id.* (citations omitted), a claim of retaliation must not be "too 'unsupported, speculative and

conclusory,'" *id.* (citing *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)).

Moreover, to be liable for depriving a plaintiff of his constitutional rights, the defendant must be personally involved in the alleged constitutional violation.  *See Nunez*, 172 F. Supp. 2d at 434.  A plaintiff can establish the personal involvement of a supervisory official through evidence that the supervisor

> (1) participated directly in the alleged constitutional violation, (2) was informed of the violation and failed to remedy the wrong, (3) created, or permitted continuation of, a policy or custom under which unconstitutional practices occurred, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring.

*Id.*

In addition, an allegation that an official ignored a prisoner's letter of complaint is insufficient to establish personal involvement.  *See Magee v. Childs*, No.CIV904CV1089GLSRFT, 2006 WL 681223, *3-*4 (N.D.N.Y. Feb. 27, 2006).

Magistrate Judge Di Bianco recommended that the Court dismiss Plaintiff's retaliation claims on their merits.  With respect to Plaintiff's claims of retaliation against Defendants Goord, Knapp-David, LeClaire, and Wright, the only basis for those claims was that Plaintiff allegedly wrote letters to these Defendants.  However, as Magistrate Judge Di Bianco noted, such an allegation is insufficient to establish personal involvement.

Magistrate Judge Di Bianco also determined that Defendants Knapp-David and Van Buren were not personally involved in any alleged constitutional violation.  Based upon the uncontroverted evidence in the record, Magistrate Judge Di Bianco found that Defendant Knapp-David was not involved in making transfer decisions for individual inmates and had no

involvement in any of Plaintiff's transfer decisions and that Defendant Van Buren was not a medical doctor and that his only job was to make sure that inmates received the medical treatment already prescribed.

Plaintiff does not object to this recommendation other than to note that Defendants are not entitled to summary judgment.  Even a cursory review of the record demonstrates that Plaintiff's claims of retaliation against Defendants Goord, Knapp-David, LeClaire, and Wright are vague and inconclusive.  Moreover, there is nothing in the record to indicate the nature of the retaliation Defendants allegedly took against Plaintiff.  Furthermore, the record demonstrates that Defendants investigated all the letters or "grievances" that Plaintiff sent to them and referred them to the appropriate subordinates.  Finally, as Magistrate Judge Di Bianco correctly concluded, neither Defendant Knapp-David nor Defendant Van Buren were personally involved in the decisions that Plaintiff alleges violated his constitutional rights.  Accordingly, for the above-stated reasons, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's retaliation claims.

### 6. Plaintiff's Eighth Amendment claim against Defendant Stoltenberg

To establish an Eighth Amendment claim against Defendant Stoltenberg for verbal harassment, Plaintiff must prove that the alleged harassment was "objectively, sufficiently serious" to rise to the level of a constitutional violation.  *See Boddie,* 105 F.3d at 861.  Verbal harassment absent a physical injury, however, does not rise to such a level.  *See Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) (noting that, "[a]lthough indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation

cognizable under [section] 1983").

In his amended complaint, Plaintiff alleges that Defendant Stoltenberg "discriminated" against him by using threats and vulgarity.  Magistrate Judge Di Bianco recommended that the Court dismiss this claim because threats and verbal harassment, absent a more substantial injury than humiliation and embarrassment, do not rise to the level of a constitutional violation under § 1983.  Since there is no indication that Plaintiff received any physical injury at the hands of Defendant Stoltenberg, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claim against Defendant Stoltenberg.

### 7. *Plaintiff's due process claim against Defendant Mader*

To establish a Fourteenth Amendment claim against Defendant Mader for depriving him of his "legal article" and "copy card" in violation of his due process rights, Plaintiff must prove that he had no adequate post-deprivation remedy and that the alleged deprivation was the result of "established state procedures."  *Dove v. City of N.Y.*, No. 99CIV3020DC, 2000 WL 342682, *2 (S.D.N.Y. Mar. 30, 2000) (citations omitted).  Moreover, it is not a violation of an inmate's due process rights to provide a post-deprivation remedy, as opposed to a pre-deprivation hearing, because there is no way to predict the random deprivations of property at the hands of prison officials, and post-deprivation remedies provide a meaningful opportunity to be heard as is.  *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (footnote omitted) (holding that it is virtually impossible to provide a meaningful pre-deprivation hearing for prison officials' negligent deprivations of inmates' property).

Plaintiff alleges that on November 26, 2001, Defendant Mader confiscated his "legal article" and "copy card."  Relying upon the fact that New York provides adequate post-deprivation remedies in the form of causes of action for negligence, replevin, and conversion, *see id.* at *3, and that the Court of Claims provides an adequate forum for property claims of prison inmates, Magistrate Judge Di Bianco recommended that the Court dismiss this claim.

Magistrate Judge Di Bianco did not err in concluding that Plaintiff's due process claim must fail because New York provides an adequate post-deprivation forum for inmates to bring negligence, replevin, or conversion causes of action against prison officials who randomly deprive them of their property.  Accordingly, for the above-stated reasons, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's due process claim against Defendant Mader.

### 8. *Plaintiff's due process claim based upon his disciplinary confinement*

To establish a due process claim under the Fourteenth Amendment, a plaintiff must first establish that he has a protected liberty interest to be free from the confinement that he challenges. *See Sandin v. Conner*, 515 U.S. 472, 476 (1995).  The plaintiff then has to prove that the confinement is "atypical and significant . . . in relation to the ordinary incidents of prison life." *Id.* at 484.  Applying these principles to the circumstances before it, the Supreme Court in *Sandin* held that thirty days of solitary confinement is not an "atypical and significant" confinement. *See Sandin*, 515 U.S. at 486.

Since *Sandin,* the Second Circuit has refused to establish a "bright line" rule to determine when a confinement becomes atypical, but there are guidelines that aid in the process. *See Colon*

*v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000).  Moreover, the Second Circuit has instructed district courts that they must consider both the duration and conditions of confinement to determine what is atypical because "especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical."  *Id*. at 586 (internal citation omitted).  Applying these principles, the Second Circuit has held that, although 305 days of solitary confinement is, in fact, an "atypical and significant" hardship under the *Sandin* rule, *see Colon*, 215 F.3d at 231-32, 101 days is not an "atypical and significant" hardship, *see Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999).

Magistrate Judge Di Bianco noted that, after Plaintiff reported the alleged sexual assault and after officials had completed their investigation, prison officials placed Plaintiff in the Special Housing Unit ("SHU") for thirty days, five pre-hearing and twenty-five post-hearing, for refusing a direct order and destroying his cell mate's property.[2]  Magistrate Judge Di Bianco concluded that this confinement did not violate Plaintiff's due process rights because the thirty days that Plaintiff spent in SHU did not rise to the level of an "atypical and significant" deprivation of liberty.  Additionally, he noted that Defendants allowed Plaintiff to be heard at the disciplinary hearing and to call witnesses.  Alternatively, Magistrate Judge Di Bianco stated that, to the extent that Plaintiff's complaint could be read to allege a failure to properly investigate, that claim also lacked merit.

Although the Second Circuit has refused to adopt a "bright line" rule that anything less

---

[2] Magistrate Judge Di Bianco noted that, because he was required to interpret Plaintiff's complaint to encompass all possible constitutional violations, s*ee* Report-Recommendation at 17, he would read the complaint to include a due process claim even though Plaintiff did not specifically allege that his confinement in SHU violated his due process rights.

than 180 days confinement in SHU does not constitute an "atypical and significant" confinement, it is clear that thirty days of solitary confinement does not violate a plaintiff's due process rights absent a showing of especially harsh conditions, which are not present here. *See Colon*, 215 F.3d at 232. As the Supreme Court explained in *Sandin*, thirty days of confinement is not the sort of confinement that creates a liberty interest because it mirrors what is typical of prison life. *See Sandin*, 515 U.S. at 486. Moreover, the Court notes that, in this case, not only was Plaintiff's confinement limited in time, but prison officials provided Plaintiff with an opportunity to be heard and to call witnesses at a disciplinary hearing.

Accordingly, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with respect to any due process claims that Plaintiff is attempting to assert based upon his disciplinary confinement.

### 9. Plaintiff's ADA claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a claim under the ADA, a plaintiff must show that (1) he is a qualified individual with a disability, (2) he is being excluded from participation in, or being denied the benefits of, some service, program or activity by reason of his disability, and (3) the entity that provides the service, program or activity is a public entity. *See Clarkson v. Coughlin*, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995) (citations omitted). Additionally, a plaintiff must prove that the defendant's conduct was more than just hostile, but based on "discriminatory

animus or ill will." *Degrafinreid v. Ricks,* No. 03 Civ. 6645(RWS), 2004 WL 2793168, *5 (S.D.N.Y. Dec. 6, 2004) (citation omitted).  To meet this burden, a plaintiff must established that his disability qualifies as a disability under the ADA and that his disability was obvious enough to be the subject of discriminatory conduct.  Finally, the Second Circuit prohibits individual capacity suits against state officials under the ADA.  *See id.*; *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases).

Magistrate Judge Di Bianco recommended that the Court dismiss Plaintiff's ADA claim because his allegations regarding his disability were vague and unspecified.  In addition, Magistrate Judge Di Bianco noted that any physical or mental ailment that Plaintiff may have does not necessarily rise to the level of a "disability" under the ADA.  Finally, Magistrate Judge Di Bianco found that there was no evidence in the record that Defendants acted with any discriminatory animus toward Plaintiff.

Based on the Second Circuit's decision in *Garcia,* to the extent that Plaintiff is suing Defendants in their individual capacities under the ADA, those claims are subject to dismissal. *See Garcia*, 280 F.3d at 107.  As for Plaintiff's claims against Defendants in their official capacities, there is no question that Defendants are state employees and that DOCS' facilities are public entities under the ADA.  However, the nature of Plaintiff's alleged disability is so vague and unclear that the Court cannot determine whether it qualifies as a disability under the ADA.  Even if it did, however, Plaintiff has not alleged any facts that would support a conclusion that Defendants acted with discriminatory animus or ill will toward him.  Accordingly, the Court adopts Magistrate Judge Di Bianco's recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's ADA claim.

### III. CONCLUSION

After reviewing Magistrate Judge Di Bianco's September 19, 2005 Report-Recommendation, Plaintiff's objections thereto, the relevant parts of the record and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Di Bianco's September 19, 2005 Report-Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in its entirety for the reasons stated above; and the Court further

**ORDERS** that Defendants Mader's and Fresn's motion to dismiss on the ground that Plaintiff failed to effect timely service on them is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.[3]

**IT IS SO ORDERED**

Dated: August 7, 2006
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[3] The Court instructs the Clerk of the Court to enter judgment, dismissing all claims with prejudice except for Plaintiff's Eighth Amendment excessive force claim against Defendant Mader which is to be dismissed without prejudice.